**No. 21-55994 & 21-55995**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ESTATE OF DANIEL HERNANDEZ, et al.,

*Plaintiffs-Appellants*,

v.

CITY OF LOS ANGELES, et al.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Central District of California
No. 2:20-cv-04477-SB
The Honorable United States District Judge Stanley Blumenfeld, Jr.

## BRIEF OF THE NATIONAL POLICE ACCOUNTABILITY PROJECT (NPAP) AS *AMICUS CURIAE* IN SUPPORT OF APPELLANTS

Lauren Bonds
Eliana Machefsky
NATIONAL POLICE
  ACCOUNTABILITY PROJECT
P.O. Box 2981
Berkeley, CA 94702
 (504) 220-0401

John Burton
THE LAW OFFICES OF JOHN BURTON
128 North Fair Oaks Avenue
Pasadena, CA 91103
(626) 449-8300

Steve Art
David B. Owens
LOEVY + LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900

Michael J. Haddad
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, CA 94612
(510) 452-5500

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for *amicus curiae* respectfully submit the National Police Accountability Project (NPAP) is a non-profit organization. It has no parent corporation, and no publicly held corporation owns ten percent or more of its stock because it has no stock. *Amicus* does not have a financial interest in the outcome of this litigation.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

INTEREST OF THE *AMICUS CURIAE* ................................................. 1

AUTHORSHIP AND PREPARATION OF THE BRIEF ....................................... 1

INTRODUCTION ............................................................................. 2

ARGUMENT ................................................................................. 7

I.   The Supreme Court's Recent Decisions Do Not Support an Expansive View of Qualified Immunity .................................................................. 7

    A.   The Supreme Court and This Court, Until Recently, Have Consistently Applied the Same Qualified Immunity Standards .......... 7

    B.   A Large Body of Authority Emphasizes That Qualified Immunity Should Be Employed Sparingly ........................................... 9

II.  The Panel's Too-Narrow Approach to Clearly Established Law Emphasized Insignificant Factual Differences and Disregarded Controlling Law .......... 14

III. The Panel's Decision to Define Clearly Established Law Too Narrowly Undermines the Rule of Law ....................................................... 19

    A.   The Panel's Approach Risks Undermining the Binding Effect of Precedent ........................................................... 19

    B.   The Panel's Approach Encourages Improper Interlocutory Appeals . 20

    C.   The Panel's Approach Improperly Usurps the Jury's Role ............... 22

CONCLUSION ............................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Perrill*, 916 F.2d 1392 (9th Cir. 1990) ................................................11

*Anderson v. Creighton*, 483 U.S. 635 (1987) ................................................. 5, 9, 23

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ...................................................................9

*Browder v. City of Albuquerque*, 787 F.3d 1076 (10th Cir. 2015) ................... 23, 24

*Calonge v. City of San Jose*, 104 F.4th 39 (9th Cir. 2024) .....................................29

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) ...............................3

*City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600 (2015) ............................9

*Cruz v. City of Anaheim*, 765 F.3d 1076 (9th Cir. 2014)........................................30

*Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003) ...............................5

*Estate of Aguirre v. Cnty. of Riverside*, 29 F.4th 624 (9th Cir. 2022)........ 20, 21, 22

*Estate of Hernandez v. City of Los Angeles*, 96 F.4th 1209 (9th Cir. 2024) ..........21

*George v. Morris*, 736 F.3d 829 (9th Cir. 2013) ......................................... 5, 21, 22

*Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014)...................................29

*Gordon v. Cnty. of Orange*, 6 F.4th 961 (9th Cir. 2021) ............................. 7, 11, 18

*Green v. Thomas*, No. 3:23-CV-126-CWR-ASH,

    2024 WL 2269133 (S.D. Miss. May 20, 2024) ...........................................14

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ...................................................... 13, 23

*Hayes v. Cnty. of San Diego*, 736 F.3d 1223 (9th Cir. 2013).................... 20, 21, 22

*Hoggard v. Rhodes*, 141 S. Ct. 2421 (2021).........................................................4, 14

*Hope v. Pelzer*, 536 U.S. 730 (2002) .............................................................. 10, 11

*Jamison v. McClendon*, 476 F.Supp.3d 386 (S.D. Miss. 2020) .............................15

*Johnson v. Jones*, 515 U.S. 304 (1995) ....................................................27

*Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995) .................................7, 11

*Kisela v. Hughes*, 584 U.S. 100 (2018) ......................................... 3, 9, 14

*Lombardo v. St. Louis*, 594 U.S. 464 (2021) ...........................................9

*Marbury v. Madison,* 5 U.S. 137 (1803)..................................................26

*Mattos v. Agarano*, 661 F.3d 433 (2011)................................................19

*Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) ...............................3, 10

*McKinney v. City of Middletown*, 49 F.4th 730 (2d Cir. 2022) ...............14

*Mendoza v. Block*, 27 F.3d 1357 (9th Cir. 1994)....................................11

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ..............................................27

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)........................27

*Payne v. Tennessee*, 501 U.S. 808 (1991) ..............................................25

*Pearson v. Callahan*, 555 U.S. 223 (2009).................................... 5, 18, 19

*Pierson v. Ray*, 386 U.S. 547 (1967) .......................................................3

*Plumhoff v. Rickard*, 572 U.S. 765 (2014).............................................27

*Price v. Montgomery County*, 144 S. Ct. 2499 (July 2, 2024)............4, 17

*Rogers v. Jarrett*, 63 F.4th 971 (5th Cir. 2023) .....................................17

*Rosenbaum v. City of San Jose,* No. 22-16863,

    2024 WL 3366493 (9th Cir. July 11, 2024).....................................6

*Sampson v. County of Los Angeles*, 974 F.3d 1012 (9th Cir. 2020).......14

*Saucier v. Katz*, 533 U.S. 194 (2001) ....................................................10

*Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994) .......................................30

*Sec. & Exch. Comm'n v. Jarkesy*, 144 S. Ct. 2117 (2024) .....................30

iv

*Simon v. City of New York*, 893 F.3d 83 (2d Cir. 2018) ..........................18

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) ............................29

*Tan Lam v. City of Los Banos*, 976 F.3d 986 (9th Cir. 2020) ................... 20, 21, 22

*Taylor v. Riojas*, 592 U.S. 7 (2020) ...................................................3, 10

*Tennessee v. Garner*, 471 U.S. 1 (1985)..............................................19

*Thompson v. Clark*, 2018 WL 3128975 (E.D.N.Y. June 26, 2018) .......................15

*Zadeh v. Robinson*, 928 F.3d 457 (5th Cir. 2019) ..................................14

*Zion v. Cnty. of Orange*, 874 F.3d 1072 (9th Cir. 2017) ........................... 20, 21, 22

**Statutes**

28 U.S.C. § 1291 ........................................................................26

42 U.S.C. § 1983 .......................................................................7, 12

Civil Rights Act of 1871, ch. 22, § 1, 17 Stat. 13 (1871) ........................16

**Other Authorities**

Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 CALIF. L. REV. 201 (2023) ...................................................... 4, 15, 16

Arthur R. Miller, Simplified Pleading, Meaningful Days In Court, And Trials On The Merits: Reflections On The Deformation Of Federal Procedure, 88 N.Y.U. L. REV. 286 (2013)...........................................................31

David B. Owens, *Violence Everywhere: How The Current Spectacle of Black Suffering, Police Violence, and the Violence of Judicial Interpretation Undermine the Rule of Law*, 476 STAN. J. CIV. RTS. CIV. LIB. 475 (2021) .........24

ERIC FONER, THE SECOND FOUNDING: HOW THE CIVIL WAR AND RECONSTRUCTION REMADE THE CONSTITUTION (2019)....................................................12

Joanna C. Schwartz, *How Qualified Immunity Fails*, 127 YALE L. J. 2 (2017) ......28

Joanna Schwartz, *Qualified Immunity's Selection Effects*, 114 NW. U. L. REV. 1101 (2020) ...........................................................................28

Karen Blum, *Qualified Immunity: Time to Change the Message*, 93 NOTRE DAME L. REV. 1887 (2018) ...........................................................28

William Baude, *Is Qualified Immunity Unlawful?*, 106 CAL. L. REV. 45, 55 (2018) ........................................................................................ 15, 25

**Rules**

Fed. R. App. P. 29 ....................................................................................1

**Treatises**

15A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE (2d ed. 1991) ...............................26

## INTEREST OF THE *AMICUS CURIAE*

The National Police Accountability Project (NPAP) was founded in 1999 to address allegations of misconduct by law-enforcement and detention-facility officers through coordinating and assisting civil-rights lawyers and community organizations. NPAP has approximately 550 attorney members practicing in every region of the United States, including over 100 in the Ninth Circuit. Every year, NPAP members litigate the thousands of cases of law enforcement and detention facility abuse that do not make headlines as well as many of the high-profile cases that capture national attention. NPAP provides training and support for its member attorneys and resources for non-profit organizations and community groups working on law-enforcement and detention-facility accountability issues. NPAP also advocates for legislation to increase accountability and appears regularly as *amicus curiae* in cases, such as this one, presenting issues of particular importance for its members and their clients.[1]

## AUTHORSHIP AND PREPARATION OF THE BRIEF

Pursuant to Fed. R. App. P. 29(a)(4)(E), *amicus curiae* NPAP certifies that no party or counsel for any party authored any portion of the brief, in whole or in part. No party or counsel for any party contributed money for the preparation or

---

[1] All parties have consented to the filing of this brief.

submission of the brief. No person, other than *amicus curiae* NPAP, contributed money for the preparation or submission of the brief.

## INTRODUCTION

Member attorneys of *Amicus curiae* the National Police Accountability Project (NPAP), along with their clients suing for redress of alleged constitutional violations, must navigate through this Court's recent (sometimes inconsistent) decisions on the qualified-immunity doctrine. This appeal presents the opportunity for the *en banc* Court to restate the fundamental principles of qualified immunity in relation to alleged police misconduct, thus providing needed guidance to future Ninth Circuit panels, and to the district courts.

Although the Supreme Court has at times reversed qualified-immunity cases arising from this Circuit (and others), nothing about those cases has altered the Supreme Court's qualified-immunity doctrine. Instead, the Supreme Court has recently reaffirmed the core principles governing the qualified immunity analysis: All factual inferences must be drawn in favor of the plaintiff when considering whether the law was clearly established. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Although rights should not be defined too generally, there is no need for a plaintiff to identify a case directly on point. *Ziglar v. Abbasi,* 582 U.S. 120, 151-52 (2017). All that is required is that government officials have fair notice that their conduct is illegal. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). And even without

past cases defining a particular right, some misconduct is obviously unconstitutional. *Taylor v. Riojas*, 592 U.S. 7, 8 (2020). This Court should reiterate those controlling principles, which are deeply rooted in this Court's cases as well. *See, e.g.*, *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (*en banc*); *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (*en banc*).

At the same time, Justices of the Supreme Court and judges in other federal courts recently have acknowledged that qualified immunity rests on a shaky foundation. The doctrine of qualified immunity is judicially created and was fashioned almost 60 years ago in *Pierson v. Ray*, 386 U.S. 547, 554-55 (1967). Its origins cannot be located in the text or history of § 1983 or the constitutional amendments that statute was enacted to enforce. *Hoggard v. Rhodes*, 141 S. Ct. 2421, 2421 (2021) (Thomas, J., respecting denial of *certiorari*). Recent scholarship demonstrates that the doctrine of qualified immunity contradicts the statutory text enacted by Congress and signed into law by President Ulysses S. Grant, which expressly displaced common-law defenses and provided that common law immunities *do not* protect state actors from suit under § 1983. *See Price v. Montgomery County*, 144 S. Ct. 2499, 2500 n.2 (July 2, 2024) (Sotomayor, J., respecting denial of *certiorari*) (discussing Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 CALIF. L. REV. 201, 235 (2023)). "This new

3

scholarship reinforces why, at a minimum, this immunity doctrine should be employed sparingly." *Id*.

Indeed, the Supreme Court has always maintained that the "'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that '*insubstantial* claims against government officials [will] be resolved prior to discovery.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, n.2 (1987)) (emphasis added).

The panel here did not apply immunity sparingly to eliminate an insubstantial claim. Instead, when it affirmed the district court's grant of qualified immunity to the Defendants-Appellees, the panel applied a highly specific requirement for clearly established law, which cannot be reconciled with controlling Supreme Court and Circuit precedent. Upholding qualified immunity here would undermine the clearly established rule set out in *George v. Morris*, 736 F.3d 829, 837 (9th Cir. 2013), and *Zion v. County of Orange*, 874 F.3d 1072, 1075-76 (9th Cir. 2017), as well as other Circuit cases holding that law enforcement officers are fairly on notice that when a suspect does not pose an immediate threat shooting may violate the Fourth Amendment. *Cf. Rosenbaum v. City of San Jose,* No. 22-16863, 2024 WL 3366493, at *5 (9th Cir. July 11, 2024) (holding officers are not entitled to immunity when allowing police dog to continue biting after suspect posed no threat).

4

The Court should use this opportunity to clarify intra-Circuit standards for defining at what level of particularity a prior decision must provide notice in qualified-immunity cases to maintain the continuity and consistencies of the Court's precedents. Here, the panel's highly specific approach to defining clearly established law undermines precedent, robbing authorities of their legal force by confining decisions meant to establish more general principles to specific facts and by ignoring the legal foundations on which they rest. All the while, the panel's approach incentivizes officials to take improper interlocutory appeals imbued with factual questions, which increase the Circuit's workload while delaying resolution of meritorious cases.

Moreover, broad application of the qualified-immunity doctrine can usurp the jury's role under the Seventh Amendment and Federal Rules of Civil Procedure to decide whether a use of force violated the Fourth Amendment right to be free from unreasonable seizure. The panel reduced the qualified-immunity analysis to such a granular level that even existing Supreme Court and Circuit decisions defining prior constitutional violations might always be distinguished from a district court's or appellate panel's molecular view of the facts before it. Such an approach would effectively substitute a judge's determination in place of the jury's, and it would permit courts to "'define away all potential claims,'" *Gordon v. County of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (quoting *Kelley v. Borg*, 60

5

F.3d 664, 667 (9th Cir. 1995)). It also would run afoul of the Supreme Court's directive that the facts must be construed strictly against the officer in qualified-immunity analyses, including on the question whether the law is clearly established, *Tolan*, 572 U.S. at 657 ("[C]ourts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions."). This Court should reaffirm that the job of deciding the facts in § 1983 cases is properly assigned to the jury under federal law.

NPAP asks the Court to reverse the district court's grant of summary judgment. NPAP urges the Court to emphasize the core components of the qualified immunity analysis established in Supreme Court and Circuit precedents, providing clearer guidance to future panels and to district courts within the Ninth Circuit. The Court should confirm that qualified immunity is on shaky doctrinal ground and therefore must at best play a circumscribed role in federal civil-rights litigation, where the availability of immunity should be narrowly construed, consistent with Supreme Court precedent. Finally, the Court should articulate a standard for evaluating whether prior law is clearly established at an appropriate level of generality that protects meritorious § 1983 cases, eliminates insubstantial cases, protects the precedential force of this Court's past decisions, ensures the timely resolution of cases, and protects the role of the jury.

**ARGUMENT**

## I. The Supreme Court's Recent Decisions Do Not Support an Expansive View of Qualified Immunity

Recent qualified immunity decisions issued by panels and district courts within the Ninth Circuit sometimes include the sentiment that the Supreme Court has emphasized that courts should more readily grant qualified immunity to police officers. But the Supreme Court's recent qualified immunity cases suggest nothing of the sort. If anything, they say the opposite. And it is important that the *en banc* Court make clear that the Supreme Court's standards governing qualified immunity cases have not changed and that qualified immunity should be granted sparingly.

### A. The Supreme Court and This Court, Until Recently, Have Consistently Applied the Same Qualified Immunity Standards

The Supreme Court recently and regularly has reiterated the same standards that have applied in qualified immunity cases for decades. Courts must draw all inferences for the plaintiff, including on the question whether the law was clearly established, and must not decide factual disputes when resolving questions about clearly established law. *Tolan*, 572 U.S. at 657. Courts may not impose *per se* rules about whether conduct is legal or illegal in deciding qualified immunity issues in excessive force cases. *Lombardo v. St. Louis*, 594 U.S. 464, 467-68 (2021). While courts cannot define the right at issue at a high level of generality, there is no need

for a case directly on point. *Ziglar*, 582 U.S. at 151-52; *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Anderson*, 483 U.S. at 640. Instead, all that is required is that officers had "fair notice" based on prior cases that their conduct is unlawful. *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015); *Kisela*, 584 U.S. at 104; *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). Finally, some misconduct is obviously unconstitutional, even in the absence of past cases. *Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020) (reaffirming *Hope v. Pelzer*, 536 U.S. 730, 739 (2002), that requiring previous cases to be "materially similar" is a "rigid gloss on the qualified immunity standard" that is "not consistent with [the Supreme Court's] cases").

These standards are also firmly rooted in this Circuit's case law and have governed countless cases. *See*, *e.g.*, *Mattos*, 661 F.3d at 442 ("The Supreme Court has made 'clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances. We are particularly mindful of this principle in the context of Fourth Amendment cases, where the constitutional standard—reasonableness—is always a very fact-specific inquiry. If qualified immunity provided a shield in all novel factual circumstances, officials would rarely, if ever, be held accountable for their unreasonable violations of the Fourth Amendment." (quoting *Hope*, 536 U.S. at 741); *Mendoza v. Block*, 27 F.3d 1357,

1361 (9th Cir. 1994) ("Thus, when the defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts' that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established.") (citations omitted); *Gordon*, 6 F.4th at 969 ("'[C]asting an allegedly violated right too particularly, 'would be to allow . . . [defendants] to define away all potential claims.'") (quoting *Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995)); *Alexander v. Perrill*, 916 F.2d 1392, 1397 (9th Cir. 1990) (noting that the requirement of clearly established law "does not require that we find a prior case with the exact factual situation").

Established standards were not applied by the panel or district court below. This Court should ensure, as it has done in many past cases, that appropriate standards control qualified-immunity analyses in this Circuit going forward.

### B. A Large Body of Authority Emphasizes That Qualified Immunity Should Be Employed Sparingly

At the same time, Supreme Court Justices and many other federal courts have recognized recently that the doctrine of qualified immunity stands on shaky ground. While this Court obviously must follow Supreme Court precedents, these recent decisions emphasize why qualified immunity must be applied narrowly.

As a provision of the Ku Klux Klan Act of 1871—"An Act to Enforce the Fourteenth Amendment"—42 U.S.C. § 1983 is a pillar of the sea change in our

national structure brought about by Reconstruction. *See* ERIC FONER, THE SECOND FOUNDING: HOW THE CIVIL WAR AND RECONSTRUCTION REMADE THE CONSTITUTION (2019). Designed to make the Constitution's promised protections meaningful to all inhabitants of the United States, § 1983 establishes an individual's private right of action against any state or local official who has violated that person's constitutional rights. The statutory language, which includes mandatory liability, does not include the affirmative defense of qualified immunity or space for such an exception. *See* 42 U.S.C. § 1983 (providing that officials who violate constitutional rights "shall be liable").

Instead, qualified immunity dates to 1967, when the Supreme Court extended a "good faith" defense to individual § 1983 officer defendants, writing that Congress had not "meant to abolish wholesale all common-law immunities" when it enacted § 1983. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Fifteen years later, in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Court removed the "subjective" element of this affirmative defense, declaring that its availability depends not on the individual officer's state of mind but on whether the officer's conduct was objectively reasonable—whether the conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818.

Many recent federal opinions acknowledge that *Harlow*'s novel concept of "clearly established law" is nowhere to be found in the Constitution, in § 1983, or in the common-law principles animating the Supreme Court's past qualified-immunity decisions. Supreme Court justices from different ideological wings have urged reform of the qualified-immunity doctrine as a result. Justices Thomas has written that the current approach to qualified immunity "stands on shaky ground" because it does not arise from the statutory language or from the history of immunities existing at common law in 1871. *Hoggard v. Rhodes*, 141 S. Ct. 2421, 2421 (2021) (Thomas, J., respecting denial of *certiorari*); *Ziglar*, 582 U.S. at 160 (Thomas, C., concurring). Justice Sotomayor has observed that qualified immunity has become "an absolute shield for law enforcement officers, gutting the deterrent effect of the Fourth Amendment." *Kislea*, 584 U.S. at 108-121 (Sotomayor, J., dissenting).

Other jurists, too, have recognized the lack of statutory or common law foundation. *See Sampson v. County of Los Angeles*, 974 F.3d 1012, 1025 (9th Cir. 2020) (Hurwitz, J., concurring in part and dissenting in part).[2] As have legal

---

[2] *See also McKinney v. City of Middletown*, 49 F.4th 730, 756-57 (2d Cir. 2022) (Calabresi, J, dissenting) (providing and appendix of decisions from judges and scholars recognizing the lack of foundation for the doctrine of qualified immunity); *Zadeh v. Robinson*, 928 F.3d 457, 480 (5th Cir. 2019) (Willett, J., concurring in part and dissenting in part) (noting that a "strange-bedfellows alliance of leading scholars and advocacy groups of every ideological stripe . . . ha[s] joined

scholars. William Baude, *Is Qualified Immunity Unlawful?*, 106 CALIF. L. REV. 45, 55 (2018) ("[L]awsuits against officials for constitutional violations did not generally permit a good-faith defense during the early years of the Republic"); Joanna Schwartz, *The Case Against Qualified Immunity*, 93 NOTRE DAME L. REV. 1797, 1801 (2018) ("When the Civil Rights Act of 1871 was passed, government officials could not assert a good faith defense to liability.").

Moreover, as Justice Sotomayor recently acknowledged, new research demonstrates qualified immunity is actually expressly foreclosed by the actual text of § 1983 as enacted but was not included in the published U.S. Code. *See Price v. Montgomery County*, 144 S. Ct. 2499, 2500 n.2 (2024) (Sotomayor, J., respecting denial of *certiorari*) (discussing Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 CALIF. L. REV. 201 (2023)). As passed by the Reconstruction Congress, Section 1 of the Civil Rights Act of 1871—now known as § 1983—reads:

> [A]ny person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected, any person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the

---

forces" to establish "a growing, cross-ideological chorus of jurists and scholars urging recalibration of contemporary immunity jurisprudence."); *Green v. Thomas*, No. 3:23-CV-126-CWR-ASH, 2024 WL 2269133, at *1 (S.D. Miss. May 20, 2024) (Reeves, J.); *Jamison v. McClendon*, 476 F.Supp.3d 386 (S.D. Miss. 2020) (Reeves, J.); *Thompson v. Clark*, 2018 WL 3128975, at *11 (E.D.N.Y. June 26, 2018) (Weinstein, J.).

> Constitution of the United States, shall, *any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding*, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

Civil Rights Act of 1871, ch. 22, § 1, 17 Stat. 13 (1871) (emphasis added). The emphasized notwithstanding clause in Congress's originally promulgated text of § 1983 expressly displaces common-law defenses—it states that common law immunities *do not* insulate state actors from liability under § 1983. *See* Reinert, *supra*, at 235 & n.230 (2023). However, the notwithstanding clause was omitted from the first compilation of the law in 1874, and it has been missing from then until now, although the statute has not been amended. *Id.* at 207, 236-37, 244. "All to say, the Supreme Court's original justification for qualified immunity—that Congress wouldn't have abrogated common-law immunities absent explicit language—is faulty because the 1871 Civil Rights Act expressly included such language." *Rogers v. Jarrett*, 63 F.4th 971, 979-80 (5th Cir. 2023) (Willett, J., concurring).

Given qualified immunity's flawed foundation, which contradicts the language of the statute passed by the Reconstruction Congress and signed into law by President Grant, and the increasing recognition throughout society that the doctrine leads to gross injustice, the *en banc* Court should make clear that "this immunity doctrine should be employed sparingly." *Price*, 144 S. Ct. at 2500 n.2.

## II. The Panel's Too-Narrow Approach to Clearly Established Law Emphasized Insignificant Factual Differences and Disregarded Controlling Law

The panel did the opposite and offered immunity expansively. It did so by departing from the Supreme Court precedents discussed above, defining clearly established law much too narrowly, emphasizing insignificant factual differences between this case and other Circuit precedent, and disregarding controlling law that established that officers would have had notice the conduct was unlawful.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231 . These dual purposes are not fulfilled when a court places too much weight on the immunity side, by defining the clearly established right at an unrealistically particularized level, and then emphasizes immaterial differences between the present case and past precedents. *Gordon*, 6 F.4th at 969.

Instead, a court must determine whether past law provided fair notice to a defendant that conduct was illegal or that the conduct was obviously unconstitutional. To do that, the court must "'strik[e] a balance between defining the right specifically enough that officers can fairly be said to be on notice that their conduct was forbidden, but with a sufficient measure of abstraction to avoid a

14

regime under which rights are deemed clearly established only if the precise fact pattern has already been condemned.'" *Id.* (quoting *Simon v. City of New York*, 893 F.3d 83, 96-97 (2d Cir. 2018)). Defining rights too specifically upsets this balance and undermines the competing interests underlying qualified immunity.

This Court, sitting *en banc*, has been "particularly mindful of this principle in the context of Fourth Amendment cases, where the constitutional standard—reasonableness—is always a very fact-specific inquiry. If qualified immunity provided a shield in all novel factual circumstances, officials would rarely, if ever, be held accountable for their unreasonable violations of the Fourth Amendment." *Mattos*, 661 F.3d at 442. "That result would not properly balance the competing goals to 'hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Id.* (quoting *Pearson*, 555 U.S. at 231).

The panel majority took a far too constricted view of clearly established law, emphasizing facts tangential to the "contours" of the right. That officers cannot use deadly force on a person who does not pose an immediate threat is the core teaching of *Tennessee v. Garner* which holds deadly force is not justified "[w]here the suspect poses no immediate threat to the officer and no threat to others." 471 U.S. 1, 11 (1985). As a result, this rule has been "long settled" in this Circuit's Fourth Amendment law, and this Court has applied it repeatedly to deny qualified

in cases like this one. *Zion v. Cnty. of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017); *see Estate of Aguirre v. Cnty. of Riverside*, 29 F.4th 624 (9th Cir. 2022) (denying qualified immunity to an officer who used deadly force on a person who no longer posed an immediate threat to officers because he was on the ground after being shot); *Estate of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 626-27, 629 (9th Cir. 2022) (finding that shooting a suspect who posed no threat was an obvious constitutional violation and one established in precedents, and holding that cases establish that "officers must not use deadly force against non-threatening suspects, even if those suspects are armed"); *Tan Lam v. City of Los Banos*, 976 F.3d 986, 999 (9th Cir. 2020) (clearly established that police may not shoot suspect who poses no threat, citing *Zion*); *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1227-28, 1233-34 (9th Cir. 2013) (denying qualified immunity where factual disputed existed about whether the individual bearing a knife posed a threat to officers); *George*, 736 F.3d at 840 (denying officers immunity where factual dispute existed about whether a person armed with a gun had pointed it at officers before they used deadly force). In *Aguirre*, *Tan Lam*, *Hayes*, *George*, and *Zion*, this Court applied the established rule that deadly force may not be used against suspects who pose no threat to officers or others, even if they previously posed a threat.

Here, the panel recognized that a jury could reasonably find that, during the third volley of shots, Mr. Hernandez posed no threat—he was on the ground after

having been shot. *Estate of Hernandez v. City of Los Angeles*, 96 F.4th 1209, 1218 (9th Cir. 2024). Assuming Mr. Hernandez was not a threat—as a court must at this juncture—the officer was not entitled to qualified immunity. *Hernandez* must be controlled by the same law as other Ninth Circuit cases just discussed, which confirm that the constitutional violation was both obvious and established in precedent.

The panel's too-specific approach focused on insignificant factual differences between cases. But there will always be minute differences in the facts of different cases. And, as the Supreme Court has confirmed, a case with identical facts is not necessary. *Ziglar*, 582 U.S. at 151-52. Instead, what matters, and what brings this case in line with *Aguirre*, *Tan Lam*, *Hayes*, *George*, and *Zion*, is that Mr. Hernandez posed no threat when he was shot and killed, after he had crumpled to the ground, having been hit by prior gunshots. This Court should reverse the decision to grant qualified immunity in order to ensure that this Court's past decisions denying immunity in the same circumstances retain force.

Clear guidance on the appropriate level of generality for evaluating clearly established law will benefit future decisions in this Circuit. As discussed, the Supreme Court holds that immunity should be denied if prior cases provided fair notice that conduct was illegal or if the officer's conduct obviously violated the law. The doctrine thus "generally turns on the 'objective legal reasonableness' of

17

the action." *Anderson*, 483 U.S. at 639 (quoting *Harlow*, 457 U.S. at 819). With any assessment of objective reasonableness, the more substantial the actor's departure from the standard of conduct a law-abiding person would observe, the more readily a court or jury can reach the conclusion that the action was unreasonable.

As now-Justice Gorsuch observed while on the Tenth Circuit, this concept has utility in the context of "deciding the 'clearly established law' question," where courts may "employ[] a 'sliding scale' under which the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015) (citations omitted). The now-Justice continued:

> After all, some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing. Indeed, it would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt.

*Id*. at 1082-83. In addition to the established components of the qualified immunity doctrine discussed above, it would be helpful for this Court to emphasize that the more egregious an officer's misconduct, the less specificity is required from prior cases before deciding that the law is clearly established and the officer is not entitled to immunity.

18

### III. The Panel's Decision to Define Clearly Established Law Too Narrowly Undermines the Rule of Law

#### A. The Panel's Approach Risks Undermining the Binding Effect of Precedent

Defining the requirement of clearly established law extremely narrowly risks undermining the rule of law, and the notion of precedent. *See, e.g.*, David B. Owens, *Violence Everywhere: How The Current Spectacle of Black Suffering, Police Violence, and the Violence of Judicial Interpretation Undermine the Rule of Law*, 476 STAN. J. CIV. RTS. CIV. LIB. 475, 502-07 (2021). When courts issue decisions, they are not only resolving issues between those parties but applying principles of law, standards of enforcement, and creating precedent that should apply equally to people of all stripes. Especially because no case will ever be identical to prior ones, holding that "clearly established law" demands something akin to nearly identical facts risks eroding the basic concept that *law* constrains police officers and other public officials in the same way that it constrains civilians in their daily lives. *Cf.* Baude, *supra*, 106 CAL. L. REV. at 74-75 (discussing the mismatch between how qualified immunity insulates officers that is inapplicable to ordinary civilians)

The binding effect of prior precedents in our system is foundational. *E.g.*, *Payne v. Tennessee*, 501 U.S. 808, 827 (1991) (observing that adhering to precedent "promotes the evenhanded, predictable, and consistent development of

19

legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process"). Defining a right with too much specificity and distinguishing cases on minute factual differences risks rendering *established law*—and the concept of law itself—a nullity, as cases are confined to their facts instead of being decided based on legal principles, and citizens whose rights have been violated will have no remedy for having been wronged. *Cf. Marbury v. Madison,* 5 U.S. 137, 163 (1803) ("The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right."). The panel's approach risks undermining the force of legal rules, and it risks transforming qualified immunity into something more akin to unqualified impunity.

**B. The Panel's Approach Encourages Improper Interlocutory Appeals**

A too-narrow approach to clearly established law also has the negative effect of encouraging defendants to file interlocutory appeals that improperly turn on disputed facts. Appellate jurisdiction is limited to appeals from final judgments, in order to promote efficiency for circuit courts, docket control for district courts, and fairness to litigants. *See* 28 U.S.C. § 1291; 15A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3907, at 270 & n.2, 273-74 (2d ed. 1991); *Johnson v. Jones*, 515 U.S. 304, 309 (1995). The

collateral-order doctrine is an exception to this rule, permitting interlocutory

appeals of legal questions separate from the merits and potentially unreviewable

later in the case, *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009),

including district court orders denying qualified immunity to government officials,

*Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985); *Plumhoff v. Rickard*, 572 U.S. 765,

772 (2014).

But the Supreme Court has been explicit that denials of qualified immunity

only fall within the "collateral order" exception to the final-judgment rule if they

turn on pure issues of law, rather than questions of fact. *Johnson*, 515 U.S. at 304,

313-20. An approach to qualified immunity that defines clearly established law at a

granular level and searches for factual differences between cases simply disguises

a factual analysis as a legal one, and it opens the gates to police defendants filing

fact-based interlocutory appeals. Such appeals should be dismissed for lack of

jurisdiction, but a narrow approach to clearly established law encourages them.

Further encouragement of qualified-immunity appeals is not needed.

Although these appeals are not often successful, they are quite common. Joanna C.

Schwartz, *How Qualified Immunity Fails*, 127 YALE L. J. 2, 40 (2017) (finding that

more than one in five orders denying qualified immunity at summary judgment are

appealed, with less than 20% being reversed in whole or in part). Defendants gain

strategic advantage by filing interlocutory appeals, delaying resolution while

increasing settlement leverage. Karen Blum, *Qualified Immunity: Time to Change the Message*, 93 NOTRE DAME L. REV. 1887, 1891-92 n.23 (2018); Joanna Schwartz, *Qualified Immunity's Selection Effects*, 114 NW. U. L. REV. 1101, 1121 (2020). Adding the prospect that a defendant might draw a panel willing to exercise jurisdiction and reverse a district court using a highly specific factual analysis of clearly established law make an interlocutory appeal more attractive to defendants and more unfair to plaintiffs. Those appeals are a tax on appellate courts and delay for years the timely resolution of meritorious civil rights cases. That is another reason to reject the panel's approach here.

### C. The Panel's Approach Improperly Usurps the Jury's Role

Finally, the panel's approach also usurps the jury's role under federal law of deciding the facts. The Seventh Amendment and the Federal Rules of Civil Procedure assign the responsibility of deciding whether officers used excessive force when they shot Mr. Hernandez to a jury. This Court has recognized that because Fourth Amendment questions "nearly always require[] a jury to sift through disputed factual contentions, and to draw inferences therefrom," *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (*en banc*), summary judgment "should be granted sparingly in excessive force cases." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014) (*en banc*). Often the evidence conflicts, even among law enforcement witnesses. *See Calonge v. City of San Jose*,

104 F.4th 39, 46-50 (9th Cir. 2024). Particularly where the subject of the force used has died, courts "cannot 'simply accept what may be a self-serving account by the police officer.'" *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). Instead, disputes of fact often arise from circumstantial evidence that could cast doubt on the police officer's story, disputes that must be sent to a jury. *Id.*

The panel's insistence on a microscopically granular analysis of clearly established law redirected the factfinding in this case from the jury, where the Seventh Amendment and Federal Rules assign the task, to the bench. The panel's analysis required Mr. Hernandez's survivors to identify past cases equivalent on *all* of their facts—even those facts with tangential bearing on the contours of the constitutional violation at issue—to demonstrate a violation of clearly established law. This approach necessarily calls for an interpretation of the facts of this case that is in irreconcilable tension with the requirement imposed by the Seventh Amendment and the Federal Rules of Civil Procedure that facts be decided by a jury. *See Sec. & Exch. Comm'n v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024) (reiterating last Term that "every encroachment upon [the Seventh Amendment] has been watched with great jealousy."). Moreover, it flatly contradicts the Supreme Court's admonition that the facts of a case must be construed for the plaintiff and against officers on the question whether the law was clearly

established. *Tolan*, 572 U.S. at 657 (holding that "courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions").

Those who come before the federal judiciary to remedy an alleged constitutional deprivation as severe as the death of a loved one should not then be deprived of their Seventh Amendment right to trial by jury when they follow the letter of § 1983 by seeking a federal remedy in a federal court. Yet this is precisely what the panel's interpretation of qualified immunity accomplishes, as part of "the great growth in challenges" eroding plaintiffs' procedural rights:

> [T]here is no secret about what is happening, or frankly why, and whom it all benefits. To use a sports metaphor, these cumulative procedural changes feel like judicial piling on. The consequences of the procedural movements of the last twenty-five years are seismic. Previously, we had a commitment to trial and, when appropriate, jury trial—all in public view.

Arthur R. Miller, *Simplified Pleading, Meaningful Days In Court, And Trials On The Merits: Reflections On The Deformation Of Federal Procedure*, 88 N.Y.U. L. REV. 286, 357 (2013). This Court should emphasize that trial and appellate judges cannot usurp the jury's role under federal law by parsing the facts of the case before them at a granular level in order to distinguish those cases from clearly established prior law.

**CONCLUSION**

For the foregoing reasons, the *en banc* Court should reverse the district court's decision. The Supreme Court's qualified immunity standards have long been settled, requiring among other things that a constitutional violation be obvious or that police have fair notice that their conduct is unconstitutional even without a case directly on point. Recent authority demonstrates that it is important to apply qualified immunity sparingly, consistent with the Supreme Court's guidance that immunity exists to weed out insubstantial claims. Meanwhile, an unduly narrow approach to defining clearly established law, like the panel's approach in this case, eliminates and delays meritorious civil rights cases, undermines Supreme Court and this Court's precedents, and imposes judicial decision making on factual questions reserved in our system for juries. This Court should avoid those results in this and future cases, it should use this case to reiterate the longstanding principles governing qualified immunity, and it should bring clarity to the law, protecting individuals and law enforcement in the process.

RESPECTFULLY SUBMITTED,

/s/ *Steve Art*

25

Lauren Bonds
Eliana Machefsky
NATIONAL POLICE
   ACCOUNTABILITY PROJECT
P.O. Box 2981
Berkeley, CA 94702
 (504) 220-0401

John Burton
THE LAW OFFICES OF JOHN BURTON
128 North Fair Oaks Avenue
Pasadena, CA 91103
(626) 449-8300

Steve Art
David B. Owens
LOEVY + LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900

Michael J. Haddad
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, CA 94612
(510) 452-5500

*Counsel for Amicus Curiae*

Dated: July 29, 2024

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(C) and Circuit Rule 32-1(e), I certify that this brief: (i) complies with the type-volume limitation of Circuit Rule 29-2(c)(2) because it contains 5639 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f) and complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 16.75, set in Times Roman 14 point type.

*/s/ Steve Art*
Steve Art

**CERTIFICATE OF SERVICE**

I certify that on July 29, 2024, this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.


*/s/ Steve Art*
Steve Art